IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **C&M OILFIELD RENTALS, LLC D/B/A C-MORE ENERGY SERVICES,** *Plaintiff* <br><br> -v- <br><br> **APOLLO LIGHTING SOLUTIONS INC.,** *Defendant and* <br><br> **CLEANTEK INDUSTRIES, INC.,** *Defendant and counterclaim plaintiff* | **CIVIL NO. 6:21-CV-00544-ADA** |

### CLAIM CONSTRUCTION ORDER AND MEMORANDUM

The Court considered the Parties' claim construction briefs (Dkt. Nos. 54, 64,[1] 65, 55, 66, 69, 70) and provided preliminary constructions in advance of the *Markman* hearing. After further considering the arguments at the *Markman* hearing, the Court adopts its preliminary constructions to be its final constructions and enters those final constructions now.

### I.  BACKGROUND

**A.  U.S. Pat. No. 10,976,016**

Plaintiff C&M Oilfield Rentals, LLC ("C&M") asserts U.S. Patent No. 10,976,016 (the "'016 Patent") against Apollo Lighting Solutions, Inc. ("Apollo") and Cleantek Industries, Inc. ("Cleantek") (collectively "Defendants"). The '016 Patent has the title "Elevated structure-mounted lighting system." The '016 Patent generally discloses "[a]n improved elevated structure-mounted lighting system" that is "used on drilling rigs." '016 Patent at abstract.

---

[1] Replacement Brief.

The '016 Patent realized that prior art crown-mounted lighting systems typically had fixed lighting systems that were costly, inefficient, and burdensome to install. *Id.* at 1:17-39. Typically, once designed for a particular type of rig, the lighting systems are not able to be adapted for use on other types of rigs. *Id*.

Thus, the '016 Patent improves on existing light systems by disclosing a modular structure-mounted lighting system that "may accommodate any style or design of crown section of a drilling rig and may be mounted on a pole or independent mount system." *Id.* at 1:43-51. Claim 1 captures this concept and recites:

> 1. A modular lighting system mounted on a rig, the modular lighting system comprising:
> a plurality of light units, each light unit separately attached to a crown deck of the rig, and each light unit comprising:
> a mounting pole;
> a light fixture comprising one or more lights; and
> a bracket configured to attach the mounting pole to the crown deck of the rig.

*Id.* at 7:30-39.

### B.  U.S. Pat. No. 11,111,761

Cleantek filed its counterclaim against C&M for infringement of U.S. Patent No. 11,111,761 ("'761 Patent"). The '761 Patent has the title "Drilling rig with attached lighting system and method." The '761 Patent generally discloses "[a]n attachable lighting system for a drilling rig." '761 Patent at abstract.

The '761 Patent realized that drilling operations typically relied on "mobile lighting arrangements on vehicles" or "manually adding or providing impromptu lighting arrangements" to provide lighting during low hours of daylight. *Id.* at 1:38-46. These solutions were "inadequate and not readily adaptable to systematic visibility improvements in appropriate locations around a drilling rig." *Id*. at 1:47-49. Thus, the '761 Patent discloses a system and method for addressing these shortcomings. Claim 1 recites:

> 1. A method of providing lighting to a drilling rig site comprising, attaching at least one light fixture directly to the crown of a drilling rig on each of at least two sides of the crown, wherein the light fixture contains a fixed or removable light fixture attachment connecting the at least one light fixture to the crown, and wherein the drilling rig includes secondary containment.

*Id.* at 4:9-15.

## II.   LEGAL STANDARD

### A.   Claim Construction Generally

The general rule is that claim terms are generally given their plain-and-ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds*, 575 U.S. 959, 959 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time."). The plain and ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Philips*, 415 F.3d at 1313.

The "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution. *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). To act as his/her own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id.*

"Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317. "Distinguishing the claimed invention over the prior art during prosecution indicates what a claim does not cover." *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378–79 (Fed. Cir. 1988). The doctrine of prosecution disclaimer precludes a patentee from recapturing a specific meaning that was previously disclaimed during

prosecution. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). "[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable." *Id.* at 1325–26. Accordingly, when "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

"Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988). "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). Technical dictionaries may be helpful, but they may also provide definitions that are too broad or not indicative of how the term is used in the patent. *Id.* at 1318. Expert testimony also may be helpful, but an expert's conclusory or unsupported assertions as to the meaning of a term are not. *Id.*

### III. LEGAL ANALYSIS

A. Term #1: "crown deck"

| Pat. 10,976,016 Term | C&M's Proposal | Apollo's Proposal |
|---|---|---|
| "crown deck"<br><br>Claims 1, 2, 16, 17, 19, 22, 23, 29 | Plain and ordinary meaning: "the portion of the crown on which a person can walk and including any associated handrail" | "Crown deck" means the "crown" and not limited to (i) the portion of the crown on which a person can walk and/or (ii) any associated handrail. |

First, the Court finds that "crown" is the collection of structures at the uppermost portion of a drilling rig. This construction derives from the patentee's explicit, intrinsic definition for crown: "the uppermost portion of the drilling rig, also referred to as the 'crown' of the rig." '016 Patent at 1:15-17, 2:30-31 ("the crown 110, or top, of a drilling rig"); *see also* Section III(E), *infra* (explaining similar construction for "crown" as used in the '761 Patent).

Next, the Court finds that a "crown deck" is a portion within the crown. Specifically, the "crown deck" is the deck within the crown. Both parties' proposals agree that a deck includes a walking surface. C&M's proposal excludes support structures from the deck, such as a support beam. The Court finds that the term "deck" ordinarily includes both the walking surface and its supporting structures.

The parties dispute whether the handrail is part of the deck. A deck does not necessarily need to include a handrail, but if the handrail is present, then the handrail forms part of the deck because the specification explicitly refers to "the handrail of the crown deck." *Id.* at 6:3, 7:1-2. Other references to "the crown deck and handrails" in the specification do not change the Court's opinion because, in context, the Court finds this type of language used to emphasize the handrails, not to suggest some boundary separating the crown deck and handrails.

The Court rejects Defendants' argument that "crown" is used interchangeably with "crown deck." The '016 Patent defines the "crown" to generally refer to the "uppermost portion" or "the top of a drilling rig." *Id.* at 1:14-15, 2:31. This crown contains multiple structures, such as the crown block and the crown deck. Dkt. 64 at 6. Defendant's argument primarily relies on the '016 Patent's relabeling of element 110 as both a "crown" and a "crown deck." *Compare* '016 Patent at 2:25-31, *with id.* at Figure 3; *see also id.* at Figure 1 (showing a crown 110 with many different structures at the top or uppermost portion). However, this one-off labeling oddity does not override the explicit definition of "crown" as encompassing more than just the "deck," and the rest of the '016 Patent does not interchange "crown" with "crown deck." Moreover, Defendants' proposal would not make sense if "crown" was interchanged with "crown deck." After interchanging the terms, Defendants' proposal would read, "the 'crown deck' [is] not limited to (i) the portion of the crown deck on which a person can walk and/or (ii) any associated handrail," which results in a circular, unhelpful construction that says the crown (deck) is not limited to a portion of itself without offering any useful limitation.

Therefore, the Court finds that a "crown" is the collection of structures at the uppermost portion of a drilling rig, and the "crown deck" is a collection of structures within the crown that includes a walking surface, parts supporting the walking surface, and any associated handrail.

B.      Term #2: "mounting pole"

| Pat. 10,976,016 Term | C&M's Proposal | Apollo's Proposal |
|---|---|---|
| "mounting pole"<br><br>Claims 1, 17, 19, 22, 23 | Plain and ordinary meaning: "elongated structure for mounting where the length of the structure far exceeds the width" | "support post" |

Both the words "mounting" and "pole" are words that have ordinary, well-understood meanings, and the '016 Patent does not redefine them or use them in a context that requires a particular construction. When used together, the words "mounting pole" refers to a pole used for mounting something.

The Court rejects C&M's proposal for requiring that "the length of the structure far exceeds the width." A pole can be cut shorter and still remain a pole, even if its length no longer far exceeds the width as proposed.

The Court likewise rejects Apollo's proposal that "mounting pole" be construed as a "support post." This "support post" proposal overlooks the requirement for a mounting pole to mount something. For example, two poles leaning against opposite sides of a wall act as "support posts" because they support the wall against tilting over in either direction. But if these leaning poles do not have anything mounted on them, they are not "mounting" poles. Moreover, the Court sees no reason to change the word "pole" to "post," and such a change offers no clarity to the jury.

C.   Term #3: "bracket"

| Pat. 10,976,016 Term | C&M's Proposal | Apollo's Proposal |
|---|---|---|
| "bracket"<br><br>Claims 1, 2, 3, 5, 15, 19 | Plain and ordinary meaning, which includes a component or components connecting one part to another or holding a part | "an intermediate component or components for attaching one part to another part." |

The parties' dispute for "bracket" is two-fold: (i) whether the component(s) must be "intermediate," as Apollo proposes, and (ii) whether the use of a "bracket" is limited to "attaching one part to another part," as Apollo proposes, or also includes "holding a part," as C&M proposes.

First, the Court finds that a bracket need not be an "intermediate" component. The '016 Patent certainly shows a bracket used as an intermediate component between other parts. *E.g.,*

7

'016 Patent at Figure 6, 3:5-11.  But prior to assembly as an intermediate component in a final product, a bracket is still sold as an individual part known as a "bracket."  A hardware store will still advertise a stand-alone bracket for sale as a "bracket," well before the bracket is assembled as an intermediate component in a final product.

Second, the Court finds that a bracket may hold another part.  The specification states that "bracket 300 comprises a top mount plate 320 and a top rail clamp 330."  *Id.* at 3:9-10.  Clamping is a form of tightly holding.  Figures 9A-9F show a bracket holding the light fixture.

Therefore, the Court finds that a bracket is a component or components connecting one part to another or holding a part.

### D. Term #4: "attached," "connected," and "coupled"

| Pat. 10,976,016 Term | C&M's Proposal | Apollo's Proposal |
|---|---|---|
| "attached" Claims 1, 16, 17, 22, 23, 29  "connected" Claims 2, 3, 5, 7, 24  "coupled" Claims 9, 23, 25, 26 | Plain and ordinary meaning, which includes direct and indirect attachment, connection, and coupling. The terms "attached," "connected," and "coupled" are used interchangeably and have the same meaning in the context of the '016 Patent | The terms "attached," "connected," and "coupled" are used interchangeably and should be given their respective ordinary and customary meanings, which are likewise interchangeable. |

The parties agree that these terms are all interchangeable and dispute only whether to instruct the jury that these terms include both "direct and indirect" attachment.  Courts repeatedly construed "coupled" to include indirect attachment.  *E.g., Bradford Co. v. Conteyor N. Am., Inc.,* 603 F.3d 1262, 1270-71 (Fed. Cir. 2010).  The Court finds it helpful to make this indirect possibility explicit to a jury.

Therefore, the Court finds that "attached," "connected," and "coupled" are given their plain and ordinary meanings, which include direct and indirect attachment, connection and coupling,

8

and the terms "attached," "connected," and "coupled" are used interchangeably and have the same meaning in the context of the '016 Patent.

    E.    Term #5: "crown"

| Pat. 11,111,761 Term | C&M's Proposal | Apollo's Proposal |
|---|---|---|
| "crown"<br><br>Claims 1, 4, 5, 6, 9, 11, 14, 15, 16, 19 | "the structural assembly of sheaves or pulleys with surrounding frame at the top of the derrick or mast" | "crown" should be given its ordinary and accustomed meaning, *i.e.*, the top of a drilling rig including a base and an outer frame structure including handrails. |

In the oil rig context, "crown" is a term of art that refers to the collection of structures at the uppermost portion of a drilling rig. *See* Section III(A), *supra*.

"The parties agree 'crown' should be construed to reference *something* at 'the top of the the[/a] drilling rig.'" Dkt. 55 at 2. The Court finds that the parties' remaining dispute results from the fact that "crown" is not defined in the industry with any further specificity. The '016 Patent claims priority to March 2018, less than two years from the '761 Patent's claimed priority date of August 2016. The '016 Patent defines a crown as "the uppermost portion of the drilling rig." '016 Patent at 1:15-17, 2:30-31 ("the crown 110, or top, of a drilling rig"). No evidence or definition supports a finding that the "crown" explicitly includes or excludes sheaves, pulleys, frame, base, and/or handrails. Instead, POSITAs use the term "crown" loosely to refer to the general collection of structures at the uppermost portion of a drilling rig. It is the location of the collection of structures at the top of an oil rig, not the presence of the specific components disputed by the parties, that defines a crown. For example, the collection of structures at the top of an oil is the "crown" regardless of whether it includes handrails. The evidence submitted by the parties shows that in a particular deployment, a "crown" *may* include or exclude sheaves, pulleys, frame, base,

and/or handrails, not that a "crown" is defined as requiring the inclusion or exclusion of sheaves, pulleys, frame, base, and/or handrails.

Therefore, the Court finds that a "crown" is the collection of structures at the uppermost portion of a drilling rig.

F. Term #6: "light fixture attachment"

| Pat. 11,111,761 Term | C&M's Proposal | Apollo's Proposal |
|---|---|---|
| "light fixture attachment"<br><br>Claims 1, 2, 7, 11, 12, 17 | Means plus function.<br><br>Function: "connecting the at least one light fixture to the crown"<br><br>Structure: as shown in Figures 1B, 2, and 3, a singular, solid component with rectangular indentation at one end where the rectangular indentation engages or interacts with the crown | a "support post." |

C&M argues that "light fixture attachment" should be construed as a means-plus-function term. "[T]he use of the word "means" in a claim element creates a rebuttable presumption that § 112, para. 6 applies. . . . [T]he failure to use the word 'means' also creates a rebuttable presumption—this time that § 112, para. 6 does not apply." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015). Here, the Court applies the rebuttable presumption against construing "attachment" as a means-plus-function term. *See Dyfan, LLC v. Target Corp.*, 28 F.4th 1360 (Fed. Cir. 2022) (providing exemplary application of the rule from *Williamson*).

C&M argues that the presumption against means-plus-function interpretation is overcome because the term fails to recite any definite structure. The Court disagrees. The Court finds that the term "attachment" is merely broad, not functional. An "attachment" is any attached

10

component. *See* Dkt. 66 at exhibits 10-11 (defining "attachment"). It contains the structural requirement of being attached. In context, the light fixture attachment must be attached to the light fixture. Thus, this term is not devoid of structure and not construed as a means-plus-function term.

Apollo argues that "support post" and "light fixture attachment" are used interchangeably in the '761 Patent. The Court rejects this proposal because "support post" is a construction completely untethered to the words "light fixture," and Apollo offers no reason why the "light fixture" should be excluded from the final construction.

Therefore, the Court finds that a "light fixture attachment," is any component attached to the light fixture.

### G. Term #7: "secondary containment"

| Pat. 11,111,761 Term | C&M's Proposal | Apollo's Proposal |
|---|---|---|
| "secondary containment" Claims 1, 11 | "a structure or device capable of holding or keeping an object within its limits that does not provide the primary means of containment or securement" | "secondary containment" should be construed as additional structures or devices, *e.g.*, safety nets and/or safety cables, to prevent things from dropping off or falling from a rig. |

C&M's brief identifies two areas of dispute: (i) whether "secondary containment" may provide "the primary means of securement," and (ii) whether the construction should include examples of "secondary containment," as proposed by Apollo. Dkt. 55 at 9. There is also a third, unarticulated dispute: (iii) what action is being contained? The Court addresses these in reverse order.

As to the issue (iii) what action is being contained, the Court agrees that the action being contained is things dropping off or falling from a rig. '761 Patent at 3:53-60 ("so that nothing can drop off or fall from the unit."). This proposal is consistent with the '761 Patent's concern

11

regarding items falling from the crown of the oil rig.  C&M's proposal is too broad because it encompasses containing or securing items from moving within the crown.

As to the issue (ii) whether the construction should include examples, C&M's cited cases do not explicitly permit or prohibit examples in constructions, and Apollo offers no cases at all.  The Federal Circuit "warned against confining the claims to those embodiments," but Apollo's non-exclusive examples included by the use of "*e.g.*," does not confine the construction to any embodiments.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005).  Here, the Court excludes the examples because they may potentially mislead the jury into thinking examples automatically satisfy the claim element without considering the full construction.

As to the issue (i) whether "secondary containment" may provide "the primary means of securement," the Court finds that the parties are in agreement.  C&M argues that something "secondary" cannot be primary, which makes sense.  Apollo argues that "secondary" means "additional."  This is a distinction without a difference because, in context, "additional" means in addition to something primary.  The Court adopts C&M's proposed structure of clarifying what that something is.  For the reasons in the previous paragraph, the Court finds that secondary containment must not be the primary means of preventing an object from dropping off or falling from a rig.

Therefore, the Court finds that "secondary containment" means a structure or device that prevents an object from dropping off or falling from a rig and does not provide the primary means of preventing that object from dropping off or falling from a rig.

**H. Term #8 "attaching at least one light fixture directly to the crown of a drilling rig on each of at least two sides of the crown" and "at least one light fixture attached directly to the crown on each of at least two sides"**

| Pat. 11,111,761 Term | C&M's Proposal | Apollo's Proposal |
|---|---|---|
| "attaching at least one light fixture directly to the crown of a drilling rig on each of at least two sides of the crown" Claim 1<br><br>"at least one light fixture attached directly to the crown on each of at least two sides" Claim 11 | "light fixture" means "the component containing the light source"<br>"directly" means "with nothing in between"<br>"crown: same as above<br><br>In context, the entire limitation means:<br>"attaching at least one singular component containing the light source to the structural assembly of sheaves or pulleys with surrounding frame at the top of the derrick or mast, with nothing in between, on each of at least two sides of the structural assembly of sheaves or pulleys with surrounding frame at the top of the derrick or mast" (claim 1)<br><br>"at least one singular component containing the light source attached to the structural assembly of sheaves or pulleys with surrounding frame at the top of the derrick or mast, with nothing in between, on each of at least two sides" (claim 11) | This phrase (and the terms therein) should be given their ordinary and accustomed meanings, *i.e.*, attaching two or more light fixtures directly to the crown, where the light fixtures are attached on two different sides of the crown.<br><br>- attaching / attached: ordinary and accustomed meaning.<br>- light fixture: ordinary and accustomed meaning.<br>- directly: ordinary and accustomed meaning<br>- crown: see proposed construction above.<br>- sides: ordinary and accustomed meaning. |

The Court begins by applying the general rule that the words in these phrases should have their plain and ordinary meaning. *Phillips*, 415 F.3d at 1312. Nothing in either parties' briefs convinces the Court to rule otherwise.

Therefore, the Court finds that the words in this claim element are given their plain and ordinary meaning, except for terms otherwise construed in this opinion.

I. **Term #9: "wherein the light fixture contains a fixed or removable light fixture attachment connecting the [at least] one light fixture to the crown"**

| Pat. 11,111,761 Term | C&M's Proposal | Apollo's Proposal |
|---|---|---|
| "wherein the light fixture contains a fixed or removable light fixture attachment connecting the [at least] one light fixture to the crown"<br><br>Claims 1, 11 | "light fixture attachment": same as above<br>"light fixture": same as above<br>"wherein the light fixture contains a fixed or removable light fixture attachment connecting the [at least] one light fixture to the crown": Indefinite. | This phrase (and the terms therein) should be given their ordinary and accustomed meanings.<br>• light fixture: ordinary and accustomed meaning<br>• fixed: ordinary and accustomed meaning<br>• removable: ordinary and accustomed meaning<br>• light fixture attachment: see proposed construction above.<br>• connecting: ordinary and accustomed meaning, same as in '016 Patent<br>• crown: see proposed construction above. |

The Court applied canon of construction to construe terms to preserve their validity and made every effort to keeps this term definite consistent with the meanings of the words that it uses. After considering various possibilities, the Court could not do so and finds this term indefinite.

Claim 1 of the '761 Patent includes the following limitations: "attaching at least one light fixture directly to the crown," and "the light fixture contains a fixed or removable light fixture attachment connecting the at least one light fixture to the crown." Claim 11 contains corresponding limitations.

The '761 Patent is relatively short. The relevant portion of specification states:

> The light fixtures described herein (**29**) are shown attached directly to the crown, in this instance visible on three sides. The light fixture (**101** and **203**) as shown in this embodiment also in FIG. 1B and in perspective view in FIG. 2 is held by a bracket (**102** and **204**) which permits the light fixture to swivel both in a horizontal and vertical orientation. And in this embodiment, the light fixture is connected to the crown directly through the light fixture attachment (**103** and **202**).

''761 Patent at 3:40-48. The following annotated version of figures 1B and 2 inform the Court's analysis:



Fundamentally, the problem is that the claims and detailed description do not describe what is pictured. Figure 1B and figure 2 show three discrete components: a light fixture, a bracket, and the light fixture attachment. The Court understands that the light fixture attachment directly contacts the "crown," which is omitted from these drawings. These figures make it clear that the "light fixture" is not "attached directly to the crown," as described in the specification because the light fixture is indirectly coupled through the bracket and through the light fixture attachment to the crown. In view of this, a POSITA would not be able to determine if the patentee intended for the word "directly" to mean "indirectly" because the detailed description does not describe what is illustrated and because these words have opposite meanings.

15

The Court attempted to overcome this problem and preserve the validity of the claim by construing "light fixture" to extend and include the "light fixture attachment" and the "bracket" shown in figures 1B and 2. When drawing the "light fixture" box to encompass the light fixture attachment, the light fixture is directly attached to the crown. This box is consistent with the claim limitation that "the light fixture contains a fixed or removable light fixture attachment," and dependent claim 12. But the Court cannot save the claim in this way because the specification states, "The light fixture (**101** and **203**) as shown . . . is held by a bracket (**102** and **204**) which permits the light fixture to swivel." '761 Patent at 3:42-45. Thus, the specification makes clear that the light fixture in the figures is only the part held by the bracket and does not extend to include both the bracket and the light fixture attachment. In view of these competing descriptions and illustrations, the Court cannot determine what the inventors intended to include in its claim.

Thus, a POSITA cannot determine 1) what it means for the light fixture to be "directly" connected to the crown when the claim also requires a light fixture attachment that connects the light fixture to the crown and 2) what it means for the light fixture to contain a fixed or removable light fixture attachment. The Court finds this term indefinite.

**J.      Term #10: "attached around the perimeter of the crown"**

| Pat. 11,111,761 Term | C&M's Proposal | Apollo's Proposal |
|---|---|---|
| "attached around the perimeter of the crown" Claim 14 | "attached on the outermost boundary of every side of the crown" | "attached along the outer frame structure of the crown and not limited to specific sides" |

The Court agrees with C&M proposal for two reasons. First, a perimeter is the outer boundary of a two-dimensional object. Apollo proposes that the perimeter is the "outer frame structure." Apollo's proposal applies the definition of "perimeter" to certain cases where the outer

frame structure forms the outermost structure, but C&M's proposal of "outermost boundary" applies generally to all cases, even when a "frame" of the crown does not form the outermost boundary.

Second, the Court finds that something attached "around" the perimeter should generally encircle the perimeter. In cases where the perimeter is a rectangle or other polygon,[2] the claim requires attaching devices to every side of polygon. The Court reject's Apollo's proposal because it allows for attaching something "along" just one side of a polygon—this is not attaching something "around" that polygon.

Therefore, "attached around the perimeter of the crown" means "attached on the outermost boundary of every side of the crown."

## IV. CONCLUSION

For the reasons described herein, the Court adopts the below as its final constructions.

| Pat. 10,976,016 Term | The Court's Final Constructions |
|---|---|
| "crown deck"<br><br>Claims 1, 2, 16, 17, 19, 22, 23, 29 | A "crown" is the collection of structures at the uppermost portion of a drilling rig, and the "crown deck" is a collection of structures within the crown that includes a walking surface, parts supporting the walking surface, and any associated handrail. |
| "mounting pole"<br><br>Claims 1, 17, 19, 22, 23 | A "mounting pole" is a pole used for mounting something. Both "mounting" and "pole" have their plain and ordinary meanings. |

---

[2] Neither party addresses circular perimeters, so the Court does not address it either.

| Pat. 10,976,016 Term | The Court's Final Constructions |
|---|---|
| "bracket" <br><br> Claims 1, 2, 3, 5, 15, 19 | A component or components connecting one part to another or holding a part. |
| "attached" <br><br> Claims 1, 16, 17, 22, 23, 29 | Plain and ordinary meaning, which includes direct and indirect attachment, connection, and coupling. <br><br> The terms "attached," "connected," and "coupled" are used interchangeably and have the same meaning in the context of the '016 Patent. |
| "connected" <br><br> Claims 2, 3, 5, 7, 24 | |
| "coupled" <br><br> Claims 9, 23, 25, 26 | |

| Pat. 11,111,761 Term | The Court's Final Constructions |
|---|---|
| "crown" <br><br> Claims 1, 4, 5, 6, 9, 11, 14, 15, 16, 19 | The collection of structures at the uppermost portion of a drilling rig. |
| "light fixture attachment" <br><br> Claims 1, 2, 7, 11, 12, 17 | Any component attached to the light fixture. |
| "secondary containment" <br><br> Claims 1, 11 | A structure or device that prevents an object from dropping off or falling from a rig and does not provide the primary means of preventing that object from dropping off or falling from a rig. |
| "attaching at least one light | Plain and ordinary meaning, except as otherwise construed by the Court. |

| Pat. 11,111,761 Term | The Court's Final Constructions |
|---|---|
| "fixture directly to the crown of a drilling rig on each of at least two sides of the crown" Claim 1<br><br>"at least one light fixture attached directly to the crown on each of at least two sides" Claim 11 | |
| "wherein the light fixture contains a fixed or removable light fixture attachment connecting the [at least] one light fixture to the crown" Claims 1, 11 | Indefinite. |
| "attached around the perimeter of the crown" Claim 14 | "attached on the outermost boundary of every side of the crown" |

**SIGNED** this 7th day of April, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE